IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ROSE ANN KEITH,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:07-CV-40-L** |
| | § | |
| **HARTFORD LIFE and ACCIDENT** | § | |
| **INSURANCE COMPANY as SUCCESSOR** | § | |
| **by MERGER to HARTFORD LIFE** | § | |
| **GROUP INSURANCE COMPANY f/k/a** | § | |
| **CNA GROUP LIFE ASSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Hartford Life and Accident Insurance Company's Rule 12(b)(6) Motion to Dismiss,[1] filed April 23, 2007. After careful review of the motion, response, reply, briefs, appendices, and the applicable authority, the court, for the reasons herein stated, **grants** Defendant Hartford Life and Accident Insurance Company's [Motion for Summary Judgment].

**I.    Background**

Plaintiff Rose Ann Keith ("Plaintiff" or "Keith") brings this civil action against Defendant Hartford Life and Accident Insurance Company as successor by merger to Hartford Life Group Insurance Company f/k/a CNA Group Life Assurance Company ("Hartford") and seeks reinstatement of long-term disability benefit payments under a group long-term disability policy

---

[1] Defendant's motion to dismiss includes matters outside the pleadings. As the court elects not to exclude those matters, the motion to dismiss will be treated and referred to as a motion for summary judgment pursuant to Fed. R. Civ. P. 56. Moreover, Keith treats the motion as one for summary judgment and has submitted evidence to support her response in opposition to the motion.

**Memorandum Opinion and Order - Page 1**

issued by Continental Casualty Company ("CNA")[2] to U.S. Foodservice. The action was removed to federal court on the basis of diversity and that the amount in controversy exceeded $75,000, and federal question based upon the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144 *et seq*.

U.S. Foodservice, Inc. ("Foodservice") maintains the U.S. Foodservice, Inc. Health and Welfare Plan ("the Plan"). The U.S. Foodservice Disability Plan is the portion of the Plan that provides long-term disability ("LTD") insurance coverage to Foodservice employees. The LTD benefits were provided under the group LTD policy issued to Foodservice by CNA. Foodservice terminated this policy effective December 31, 2006.

Plaintiff was an employee of Foodservice. On November 1, 1999, while employed at Foodservice, Plaintiff was injured in an automobile accident and began receiving short-term disability ("STD") benefits. Upon the expiration of the STD benefits, Plaintiff applied for and received LTD benefits. On November 14, 2000, Plaintiff was informed that she would receive benefits for twenty-four months and would continue to receive benefits provided that she remained "totally disabled from any occupation for which [she was] or bec[a]me qualified by education, training or experience up to the maximum period stated in the policy." Pl.'s Am. Compl. ¶ 6. On December 4, 2004, Hartford terminated Plaintiff's benefits because it determined that there were other occupations that she was able to perform. Plaintiff contends that Hartford was unable to contact at least one of her treating physicians and the denial was, therefore, based upon incomplete information. Because she was unsuccessful in her appeal of the decision, Plaintiff filed this action.

---

[2]Hartford Life Group Insurance Company acquired CNA's group benefits business. Perkins Aff. n.1. Hartford is liable for CNA's actions as its successor by merger.

Plaintiff contends that Hartford's actions constituted breach of contract, bad faith insurance practices, and deceptive trade practice based upon unfair claim settlement practices. She also alleges that Hartford's actions violated provisions of the Texas Insurance Code requiring prompt payment of claims.

Hartford contends that these state law causes of action are preempted by ERISA because her allegations are "in the nature of a claim for benefits under 29 U.S.C. 1132(a)(1)(B)." Def.'s Mot. Summ. J. ¶ 15. Plaintiff argues that the Policy falls within the safe harbor provisions of the Code of Federal Regulations and is, therefore, not subject to ERISA preemption. Pl.'s Res. ¶ 7.

**II.     Standard**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id*. If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

## III. Discussion

Keith contends that the Policy was not an employee welfare benefit plan, but was a bare purchase of insurance that is not subject to ERISA preemption. Relying on *Hansen v. Continental Ins. Co.*, 940 F.2d 971 (5th Cir. 1991), and *Johnson v. Watts Regulator*, 63 F.3d 1129 (1st Cir.

**Memorandum Opinion and Order - Page 4**

1995), Keith argues that the focus of the court's inquiry should be whether Foodservice endorsed the Policy as would be understood by an objectively reasonable employee and that there is insufficient evidence in the record to support that Foodservice endorsed the Policy.

Hartford contends that the Policy qualifies as an employee welfare benefit plan under ERISA because it does not meet the four criteria of the "safe harbor" provision in 29 C.F.R. § 2510.3-1(j). Hartford argues that Keith's reliance on *Watts Regulator* is misplaced and that under Fifth Circuit precedent the criterion at issue of the safe harbor provision has not been met. The court agrees.

The issues before the court are whether (i) the Policy qualifies as an employee welfare benefit plan under ERISA and (ii) Keith's state law claims are preempted by ERISA. The court will first address whether the Policy qualifies as an ERISA plan and then address whether the state law claims are preempted.

    A.    **The Policy**

To determine whether an insurance policy purchased by an employer qualifies as an employee welfare benefit plan under ERISA, the court must determine whether a plan (i) exists; (ii) falls within the safe harbor exclusion established by the Department of Labor; and (iii) meets the ERISA requirement of establishment or maintenance by an employer for the purpose of benefiting the plan participants. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).

Because there is no dispute as to whether the plan exists and whether it meets the ERISA requirement of having been established for the benefit of the employees, the only question to be determined is whether the safe harbor exclusion applies. The Department of Labor promulgated regulations to clarify the ERISA definitions of "employee welfare benefit plan" and "welfare benefit plan." 29 C.F.R. § 2510.3-1(a). The term "safe harbor exclusion" refers to the regulation that

excludes certain group or group-type insurance programs from coverage under ERISA. *See* 29 C.F.R. § 2510.3-1(j); *See also Meredith*, 980 F.2d at 355. The safe harbor exclusion applies if (a) the employer does not contribute to the plan, (b) participation in the plan is voluntary, (c) the sole function of the employer with respect to the plan is, without endorsing the plan, to act as a conduit for premiums and publicity, and (d) the employer does not receive profit from the plan. *Meredith*, 980 F.2d at 355. If all provisions of the safe harbor exclusion are met, it applies, and the group insurance plan is excluded from coverage under ERISA. C.F.R. § 2510.3-1(j); *Hansen*, 940 F.2d at 976. The parties have stipulated that the only provision in dispute is whether the sole function of Foodservice with respect to the plan was, without endorsing the plan, to act as a conduit for premiums and publicity. Joint Status Report Re. Pl.'s Mot. To Compel 13, n.4.

Because the Fifth Circuit has addressed this issue, the court will not rely on the First Circuit authority cited by Plaintiff in this case. This provision requires an employer's involvement with a plan to be "limited *solely* to permitting the insurer to publicize the program to its employees, collecting premiums, and remitting them to the insurer." *Hansen*, 940 F.2d at 977 (emphasis in original); *see House v. American United Life Ins. Co.*, 499 F.3d 443, 449-50 (5th Cir. 2007). If an employer's involvement extends beyond these specific functions, the provision at issue cannot be met. The summary judgment evidence establishes that Foodservice's involvement exceeded the enumerated functions; therefore, the provision is not met in this case.

Foodservice controlled procurement of LTD benefits for its employees. It assumed sole responsibility for the selection and purchase of LTD insurance for its employees. This included negotiating the premiums, coverages, eligibility requirements, and other terms of the Policy. The

Policy "contain[ed] the terms and conditions negotiated by U.S. Foodservice for the benefit of its employees." Def.'s Reply App. Ex. C 6.

Foodservice also played an active role in the administration of the coverage, including providing insurance certificates to insured employees, conducting enrollment and maintaining enrollment information, obtaining and distributing insurance forms, coordinating other employee benefits with CNA, and paying and reporting taxes to the Internal Revenue Service ("IRS"). Def.'s Reply App. Ex. F 8-11, 14-15. As part of its administration of the coverage, Foodservice maintained a Benefits Department that conducted open enrollment for current employees and enrollment for newly hired employees and answered employees' questions. Def.'s Reply App. Ex. B 3-4.

Foodservice distributed a summary plan description ("SPD") to its employees. *Id.* The SPD describes the disability benefits, carries the Foodservice name and logo, and is titled "U.S. Foodservice Disability Plan." Def.'s Reply App. Ex. E 54. The SPD "provides a summary of the Disability Plan (Short Term Disability and Long Term Disability) available to eligible associates of U.S. Foodservice, Inc. ™ under the U.S. Foodservice ™ Health and Welfare Plan." *Id.* at 55. The SPD states that "U.S. Foodservice, Inc. ™ reserves the right to unilaterally, at any time and at its discretion, amend, supplement, modify or eliminate the benefits described in this booklet" and lists Foodservice as the plan administrator. *Id.* at 55, 78. The SPD required changes to LTD plan elections to be made online using www.usfbenefitoptions.com and described the employees' "other Company-provided benefits" while receiving LTD benefits. *Id.* at 65, 71. Finally, the SPD "contains a statement of the participating employees' rights under ERISA." Def.'s Reply App. Ex. B 3-4.

Because Foodservice controlled procurement of LTD benefits and a meaningful portion of the administration of those benefits, its actions exceeded the minimal "sole functions" set forth in the safe harbor exclusion provision at issue in this case. *See, e.g., Hansen*, 940 F.2d at 977 (employer's actions not sufficiently limited when the employer distributed printed materials with its name and logo on them, collected premiums, and employed a full time benefits administrator). Since all four provisions of the safe harbor exclusion are not satisfied, the exclusion does not apply. Because the exclusion does not apply and there is no dispute as to whether the plan exists and whether it meets the ERISA requirement of having been established for the benefit of the employees, the Policy qualifies as an employee welfare benefit plan under ERISA.

Moreover, the summary judgment evidence establishes that the Policy was part of the Plan. Except as provided in the IRS Form 5500, Annual Return/Report of Employee Benefit Plan ("Form 5500"), all welfare benefits plans covered by ERISA are required to file a Form 5500. Instruction for Form 5500, Section 1: Who Must File at 3. Foodservice filed a Form 5500 for the Plan in which it identifies Health, Life Insurance, Dental, Vision, and Long Term Disability as the welfare benefits provided under the Plan and CNA as the insurance carrier that provided LTD coverage for the Plan. Def.'s MSJ App. Ex. D 49-50.

For all of these reasons, no genuine issue of material fact exists as to whether the Policy qualifies as an employee welfare benefit plan under ERISA. Therefore, the Policy is an employee welfare benefit plan cognizable under ERISA and Foodservice is entitled to judgment as a matter of law on this issue.[3]

---

[3]In a previous case, Keith represented to the court that the Plan, specifically the LTD benefits at issue here, was subject to ERISA when she argued that her employer fired her in retaliation for her attempts to seek disability benefits under ERISA. *Jaurez-Keith v. U.S. Foodservice*, No. CIV.A. 3:02-CV-0090L, 2005 WL 548074, at * 10 (N.D. Tex. Mar. 8, 2005), aff'd, 192 F. App'x. 249 (5th Cir. 2006). It is disingenuous for her to now argue the contrary. That Keith

**B. ERISA Preemption**

State law claims are preempted if they "relate to" an ERISA plan. 29 U.S.C. § 1144(a); *Bank of Louisiana v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 242 (5th Cir.), *cert. denied*, 127 S.Ct. 1826 (2007). ERISA's preemption clause states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employer benefit plan." 29 U.S.C. § 1144(a). A defendant asserting ERISA preemption as an affirmative defense has the burden of proving that the claim relates to an ERISA plan by showing that: "(1) the claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities-the employer, the plan and its fiduciaries, and the participants and beneficiaries." *Bank of Louisiana*, 468 F.3d at 242 (internal quotation marks omitted).

Plaintiff alleges a cause of action for breach of contract, breach of duty of good faith and fair dealing in violation of the Texas Deceptive Trade Practices Act and the Texas Insurance Code §§ 542.003 and 542.051 (formerly Sections 21.21 and 21.55), and specific performance of the contract. These claims address a right to receive benefits under the terms of the Plan and directly affect the relationship between traditional ERISA entities (the employer, the plan and its fiduciaries, and the participants), and are therefore preempted by ERISA. *Hirth v. Metropolitan Life Ins.* Co., 189 F. App'x 292 (5th Cir. 2006) (holding that ERISA preempted plaintiff's claims for breach of contract and common law breach of duty of good faith and fair dealing, arising from the termination of LTD benefits); *Ellis v. Liberty Life Assur. Co. of Boston*, 394 F.3d 262 (5th Cir.) (holding that ERISA preempted plaintiff's claims for breach of contract and violations of article 21.21 and 21.55 of the

---

has changed her argument in no way changes the nature of the Plan.

Texas Insurance Code and the Texas Deceptive Trade Practices Act, arising from the termination of LTD benefits), *cert. denied*, 545 U.S. 1128 (2005); *McNeil v. Time Ins. Co.*, 205 F.3d 179,191 (5th Cir.) (holding that ERISA preempted plaintiff's breach of contract, common law breach of duty of good faith and fair dealing, and various other state law claims, arising from the denial of health insurance payments), *cert. denied*, 531 U.S. 1191 (2001); *Hansen*, 940 F.2d at 979 (holding that ERISA preempted plaintiff's claims for breach of contract and violations of article 21.21 of the Texas Insurance Code, arising from the denial of group accident payment).

Because Plaintiff seeks to recover benefits from a plan covered by ERISA, her exclusive remedy is provided by ERISA. *Hansen*, 940 F.2d at 979. Accordingly, there is no genuine issue of material fact as to whether all of Plaintiff's claims are preempted by ERISA, and Foodservice is entitled to judgment as a matter of law on these claims.

### IV. Conclusion

For the foregoing reasons, the court determines that Keith has failed to show that a genuine issue of material fact exists as to whether her state law claims are preempted by ERISA. Hartford is, therefore, entitled to judgment as a matter of law, and the court **grants** Defendant Hartford Life and Accident Insurance Company's [Motion for Summary Judgment]. The court **dismisses with prejudice** Keith's claims against Hartford. Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 16th day of November, 2007.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge